Weaver, J.
Defendant was convicted by a jury in the Kent Circuit Court of armed robbery. MCL 750.529. He was sentenced as an habitual offender to life imprisonment. MCL 769.12. The issue presented is whether the trial court erred in refusing to give a requested instruction on unarmed robbery. Applying the analysis of People v Cornell, 466 Mich 335; 646 NW2d 127 (2002) to the facts of this case, we conclude that the trial court did not err in refusing to give the requested instruction because the element differentiating armed robbery from unarmed robbery—namely, whether the perpetrator was armed— was not disputed. Therefore, we affirm defendant’s conviction.
Defendant’s conviction stems from an incident occurring September 27, 1997, at a Wesco gas station *442 in Kent County. Michelle Livemois, an employee who was working at the gas station at the time of the robbery, testified that at approximately 3:45 P.M., a bald, stocky man entered the gas station wearing a nylon over his face and a green and white sweatshirt turned inside out. He was holding a knife. Ms. Livemois was standing behind the counter and had just finished dropping some money in the safe. She testified that she recognized the man immediately as a previous customer. Although she did not know his name, she recalled that on previous occasions he had purchased beer and Pall Mall cigarettes. She later identified defendant as the perpetrator after he was taken into police custody.
Ms. Livemois testified that after defendant entered the store, he pushed her against the wall and began taking money from the register. After about ten seconds, Ms. Livemois was able to escape and run out of the gas station, across the street to the Hot 'N Now. She returned to the station after she observed defendant run across Daniel Street into a yard. She and her coworker, Chris McCune, then reentered the store and waited for the police to arrive. Ms. Livernois stated that approximately $1,095 was taken from the register.
Mr. McCune testified that when defendant entered the store carrying a knife, he was on the “customer side” of the counter fixing a cigarette display rack.[1] He ran out of the store to a pay phone to call 911. He then got into a track with one of the customers who was present at the gas station.[2] They followed the *443 defendant for a few minutes before Mr. McCune returned to the gas station.
Michael Noren and his girlfriend, Sabina Borowka, stopped at the Wesco gas station to buy a pair of sunglasses. As he was driving into the station, he observed defendant crouching near a wall. After making their purchases and returning to their car, an employee ran out of the gas station, screaming that he had been robbed. Mr. Noren observed defendant run out of the store and over to Daniel Street. He testified that defendant’s hands were full, and he was trying to shove things into his pocket as he ran. A few things dropped to the ground as he ran. Mr. Noren and Ms. Borowka went around to the south side of the station, where they observed money on the ground and a knife lying in the dirt. He and Ms. Borowka stayed near the knife until the police arrived.
Vivian Shepard, the manager of the gas station, explained that the gas station had eight cameras that recorded twenty-four hour surveillance of the gas station. The jury was shown the video tape of the robbery while Ms. Shepard explained what was happening on the tape. Ms. Shepard testified that the tape showed Ms. Borowka looking at sunglasses and paying for her purchase. Ms. Livemois was behind the register completing a safe drop and Mr. McCune was near a display of cigarettes. The perpetrator entered the gas station wearing a blue hat with a red button on the top.[3] Ms. Shepard testified that as the perpetra *444 tor entered the store, one could observe a stick-like object—the knife—in his hand.
Paulette VanKirk testified that as she drove into the gas station to get gas, she observed defendant run out of the station shoving money into his pocket. The money was falling to the ground, but defendant did not stop to pick it up. She and Mr. McCune followed defendant for a few minutes in her truck down a dead-end street. After she turned around, she let Mr. McCune out at the station and continued to follow defendant. She observed defendant enter the parking lot of Diemer’s Motors, a car dealership. She then flagged down two police officers who were approaching the area and told them that the Wesco gas station had been robbed and that she had observed the suspect in the parking lot.
Defendant was eventually discovered in a home near the car dealership. Robert Neuman, who resided in the home, testified that he heard defendant trying to get into his home. Defendant was perspiring. Neuman let defendant come inside. Defendant told him that he had been robbed at knife-point by two white men. Defendant used the bathroom and telephone while in Neuman’s home. Defendant was wearing a green and white sweatshirt when he entered the home, but changed into one of Neuman’s Express Autowash shirts that were drying in the bathroom.[4] About ten to fifteen minutes after defendant entered his home, police officers arrived and asked Neuman *445 to come out. After Neuman came out of the house, the officers asked defendant to come out. He eventually came out and was apprehended.
At trial, defense counsel requested the court to instruct the jury on unarmed robbery. The trial court denied the request, stating:
You did [request an unarmed robbery instruction], and I concluded not to. The prosecutor objected, and I agreed with his objection that on these facts that was not a reasonable assessment of the evidence, but would merely have opened the door to compromise somewhere between guilty and not guilty. And while juries have the right to exercise leniency and to find someone guilty of less than they are in fact guilty of, if that’s the situation, we’re not to invite it, which I think would have been done in this case. But your objection is duly noted.
Defendant appealed, arguing that the trial court erred in refusing the instruction on unarmed robbery. In a two-to-one decision,[5] the Court of Appeals affirmed defendant’s conviction.[6] Questioning whether an instruction on a necessarily included lesser offense should be required where a rational view of the evidence would not support a conviction under the instruction, the Court of Appeals agreed that existing precedent required it to hold that the trial court had erred in refusing the instruction on the necessarily lesser included offense of unarmed robbery. The Court of Appeals urged this Court to adopt the federal model and apply a “rational view of the evidence standard” to all requests for lesser included instructions. Id. at 633.
*446 Despite the error, the Court of Appeals determined that reversal was not required because the error was harmless. The Court of Appeals explained that there was no dispute concerning the existence of the knife. Uncontroverted eyewitness testimony demonstrated that the perpetrator of the robbery used a knife, that a knife was found in an area where the perpetrator had dropped some items, and that a stick-like or knife-like object was observable on the tape from the video-surveillance camera.
This Court granted leave “on the issue of the standard to be used by the trial court in determining whether necessarily lesser included offense instructions must be given when requested.” The order instructed the parties to
specifically address whether MCL 768.32 prevents the Supreme Court from adopting the federal model for necessarily lesser included offense instructions and, if it does, whether such prohibition violates Const 1963, art 6, § 5.[7]
Resolution of this case is controlled by our recent opinion in People v Cornell, supra. In Cornell, we concluded that MCL 768.32(1) only permits instructions on necessarily included lesser offenses, not cognate lesser offenses. Moreover, such an instruction is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and it is supported by a rational view of the evidence. Id. at 357.[8] Unarmed *447 robbery is clearly a necessarily included lesser offense of armed robbery. Thus, the issue in this case is whether the evidence supported such an instruction. We conclude that it did not and therefore affirm defendant’s conviction.[9]
The element distinguishing unarmed robbery from the offense of armed robbery is the use of a weapon or an article used as weapon.[10] In the present case, there is no real dispute concerning whether defendant was armed. Rather, the evidence that he was armed is overwhelming. Both employees of the gas station testified that defendant was armed with a knife when he entered the store, a knife-like or stick-like object can *448 be observed in defendant’s hand in the surveillance video tape, and a knife was found outside the gas station in the same area where defendant had dropped money. Indeed, defense counsel did not explicitly argue that defendant was not armed. Rather, he questioned the lack of fingerprints on the knife, argued that defendant was mistakenly identified as the perpetrator, and suggested that the prosecution failed to prove that the “perpetrator” used or threatened to use violence because no testimony established that the employees felt threatened by the knife. The closest counsel came to challenging the existence of a knife was to suggest that eyewitness testimony was unreliable because the witnesses were excited. A rational view of the undisputed evidence in this case requires us to conclude that the trial court did not err in refusing to give an instruction on unarmed robbery. Defendant’s conviction is affirmed.[11]
Corrigan, C.J., and Taylor, Young, and Markman, JJ., concurred with Weaver, J.

 Mr. McCune also identified defendant after he was taken into custody.

 Mr. McCune got into the truck before he completed the call to 911. Another customer picked up the phone and finished the call.

 Laura Clark, a fifth grader who lived in the area where defendant was apprehended, testified that at about 4:00 or 4:30 P.M., she observed a black man kneel by the raspberry bushes in their yard and throw his gloves there. A short time later, Laura informed her mother, who went outside to *444 check the area near the raspberry bushes. She discovered a blue hat, some nylons, and a pair of gloves. The next day, after learning about the robbery of the Wesco gas station, Mrs. Clark called the police, who came and retrieved the items.

 The green and white sweatshirt was found in Mr. Neuman’s bathroom.

 One judge concurred in the result only.

 242 Mich App 626; 619 NW2d 708 (2000).

7 465 Mich 851 (2001).

 We note that the Court of Appeals decision in this case urged this Court to consider adopting the “federal model” regarding included offense instructions. However, as our decision in Cornell makes clear, it is unnecessary to do so because resolution of this matter is governed by MCL *447 768.32, which, when given its intended meaning, happens to be similar to the federal model.

 The concurrence/dissent criticizes our majority decision in Cornell as one disregarding precedent from this Court and straying “far beyond the issue presented.” Post at 449. However, as we explained in Cornell, the cases that we overruled in that matter (and which the concurrence/dissent relies on in this matter) were cases that blatantly disregarded MCL 768.32(1)—a statute that had been in existence since 1846— as well as the prior case law interpreting that statute. “The interests in the “evenhanded, predictable, consistent development of legal principles” and the “integrity of the judicial process” require[d] that we rectify the conflict that our case law ha[d] created.” Cornell at 358, n 14.

 The aimed robbery statute reads in pertinent part:
Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony .... [MCL 750.529.]
The unarmed robbery statute reads:
Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon shall be guilty of a felony .... [MCL 750.530.]

 While the trial court’s decision was correct under the law existing at the time it refused to give the instruction, as we explained in Cornell, this case law improperly ignored MCL 768.32. Under a proper application of this statute, the instruction was not required.