# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DONNIE EVERETT,

Defendant-Appellant.

FOR PUBLICATION
January 17, 2017
9:00 a.m.

No. 328660
Wayne Circuit Court
LC No. 15-001383-FC

Before: TALBOT, C.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317, three counts of assault with intent to commit murder (AWIM), MCL 750.83, two counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 40 to 60 years' imprisonment for the second-degree murder conviction, 18 to 30 years' imprisonment for each AWIM conviction, 3 to 15 years' imprisonment for each AWIGBH conviction, and 3 to 7 years' imprisonment for the felon-in-possession conviction, and a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. For the reasons explained in this opinion, we affirm.

Defendant stood trial for the shooting death of three-year-old Amiracle Williams, the nonfatal shooting of Frieda Tiggs, Demetrius Williams, and Tkira Steen, and assaults on Chinetta Williams and Johnetta Williams. The shootings stemmed from an argument between teenaged Johnetta and her former friend, Lashay Davis. On the day of the shooting, Lashay and several of her supporters arrived at a home occupied by Amiracle and her family. Lashay and Johnetta then engaged in a physical altercation outside the house, which escalated to the point that several young men and women joined in the fray. Eventually, multiple gunshots were fired.

According to the evidence, defendant brought a gun to the scene and he fired several shots, including shots at the house occupied by Amiracle, Demetrius, and Tkira. He also fired directly at Frieda while she lay on the ground and defendant fired in the direction of Chinetta and Johnetta while they were outside the home. Amiracle was tragically shot and killed during these events, and Demetrius, Tkira, and Frieda all suffered gunshot wounds. After the shooting, defendant fled the scene with others, he stated that he shot "the momma and the daughter," and

-1-

he gave a backpack containing his gun to a neighbor. Given evidence that others at the scene also fired shots, the prosecutor presented alternative theories based on defendant's guilt as either a principal or an aider or abettor. The jury convicted defendant as noted above. Defendant now appeals as of right.

## I. ENDORSED WITNESS

Defendant first argues that the trial court abused its discretion when it granted the prosecutor's request to dismiss a witness detainer for defendant's girlfriend, Brittany Dawning, who was also present at the scene of the shooting. More fully, defendant argues that Dawning was an endorsed witness that the prosecutor was obligated to produce for trial pursuant to MCL 767.40a(3). At a minimum, defendant contends that, if the prosecutor could not produce Dawning, the trial court should have given a missing witness instruction. In contrast, the prosecutor maintains on appeal that Dawning was an "and/or," i.e., "an alternative witness, meaning that the prosecutor never guaranteed she would be called." Because she was not "expressly" endorsed, the prosecutor maintains—and the trial court agreed—that Dawning could be removed from the witness list without a showing of good cause. Alternatively, the prosecutor argues on appeal that there was good cause for deleting Dawning from the witness list and that, in any event, defendant is not entitled to relief on appeal because he has not shown prejudice.

## A. STANDARD OF REVIEW

We review a trial court's decision to permit the prosecutor to add or delete witnesses for an abuse of discretion. *People v Callon*, 256 Mich App 312, 326; 662 NW2d 501 (2003). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). A trial court necessarily abuses its discretion when it makes an error of law. *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). An abuse of discretion may also occur when a trial court "operates within an incorrect legal framework." *People v Hine*, 467 Mich 242, 250-251; 650 NW2d 659 (2002).

In comparison, statutory interpretation presents a question of law that this Court reviews de novo. *People v Steele*, 283 Mich App 472, 482; 769 NW2d 256 (2009). "Our purpose when interpreting a statute is to determine and give effect to the Legislature's intent." *People v Armstrong*, 305 Mich App 230, 243; 851 NW2d 856 (2014). "We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *People v Barrera*, 278 Mich App 730, 736; 752 NW2d 485 (2008) (citation omitted).

## B. ANALYSIS

The prosecutor's obligation to identify and produce witnesses is governed by MCL 767.40a, which, in relevant part, states:

(1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all

-2-

res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

(2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

(3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

(4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

(5) The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness. The request for assistance shall be made in writing by defendant or defense counsel not less than 10 days before the trial of the case or at such other time as the court directs. If the prosecuting attorney objects to a request by the defendant on the grounds that it is unreasonable, the prosecuting attorney shall file a pretrial motion before the court to hold a hearing to determine the reasonableness of the request.

Briefly summarized, under MCL 767.40a, "the prosecutor has a duty to attach to the information a list of all witnesses the prosecutor might call at trial and of all known res gestae witnesses, to update the list as additional witnesses became known, and to provide to the defendant a list of witnesses the prosecution intended to call at trial." *People v Koonce*, 466 Mich 515, 520-521; 648 NW2d 153 (2002). The underlying purpose of the statute is to provide notice to the accused of potential witnesses. *Callon*, 256 Mich App at 327.

Primarily at issue in the present case is the prosecutor's obligation under MCL 767.40a(3) to provide defendant a list of endorsed witnesses, i.e., a list of witnesses the prosecutor intends to produce at trial. As made plain in the statute, this list must be provided to a defendant not less than 30 days before trial. MCL 767.40a(3). The prosecutor may add or delete witnesses from this list "at any time," provided that defendant stipulates to the amendment or "upon leave of the court and for good cause shown." MCL 767.40a(4). Thus, in the absence of a defendant's agreement to remove a witness, the prosecutor must make a showing of good cause to delete a witness from the list. *People v Duenaz*, 306 Mich App 85, 104; 854 NW2d 531 (2014). Unless the prosecutor seeks to delete a witness from his witness list as provided in MCL 767.40a, "[a] prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise

-3-

due diligence to produce that witness at trial."[1]  *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004); *People v Wolford*, 189 Mich App 478, 484; 473 NW2d 767 (1991).  If a prosecutor fails to produce a witness who has not been properly excused, the trial court has discretion in fashioning a remedy for the violation of MCL 767.40a, which may include a missing witness instruction.  *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003); *People v Burwick*, 450 Mich 281, 298; 537 NW2d 813 (1995).

In this case, the prosecutor's witness list provided to defendant before trial states:

The names of the witnesses known to the People in the above-entitled case are listed below.  The witnesses the People intend to produce at trial, pursuant to [MCL] 767.40a(3), are designated by an "X" in the boxes to the left.

Following this explanation is a list of more than 60 names, including Brittany Dawning.  Notably, an "X" appears in a designated box to the left of Dawning's name, indicating that she was one of the witnesses that the prosecution intended to produce at trial pursuant to MCL 767.40a(3).  However, Dawning's name, like numerous other witnesses on the list, is also marked by a handwritten "&/or" designation.  The form provides no explanation of what this "&/or" designation is meant to signify.

At trial, near the end of the prosecutor's proofs, the prosecutor stated that she had "determined not to call" Dawning and she moved the trial court to dismiss the witness detainer for Dawning.  Defendant objected to the prosecutor's motion, asserting that Dawning was an endorsed witness who should be produced at trial.  The prosecutor responded that Dawning had only been "endorsed in the alternative."[2]  At that time, defendant objected to the use of an "and/or" witness designation on the prosecutor's witness list.  Nevertheless, accepting the "and/or" designation on the witness list as an endorsement in the alternative, the trial court granted the prosecutor's motion to dismiss the witness retainer without addressing whether there was "good cause" to remove Dawning from the witness list.[3]

In our judgment, the trial court's decision to allow removal of Dawning from the prosecutor's witness list without consideration of whether there was good cause to do so was an abuse of discretion because there is no statutory basis for "endorsing a witness in the alternative."  Such a category of endorsed "alternative" witness simply does not exist under MCL 767.40a.  Instead, the statute sets forth three basic explanations of witnesses and the prosecutor's specific obligations with respect to each type of witness at various stages in the

---

[1] "The inability of the prosecution to locate a witness listed on the prosecution's witness list after the exercise of due diligence constitutes good cause to strike the witness from the list." *People v Canales*, 243 Mich App 571, 577; 624 NW2d 439 (2000).

[2] As discussed, *infra*, the prosecutor also asserted that there was good cause to remove Dawning from the witness list.

[3] According to the trial court, it is not "uncommon for the prosecutor to list witnesses in the alternative."

proceedings. There are witnesses the prosecutor might call at trial who are listed with the information, MCL 767.40a(1), known res gestae witnesses, MCL 767.40a(1), (2), and, finally, endorsed witnesses who the prosecution intends to produce at trial, MCL 767.40a(3) and (4). See generally *Koonce*, 466 Mich at 520-521.

In particular, under MCL 767.40a(1), when filing the information, the prosecutor must attach a list of known witnesses who "might" be called as well as all known res gestae witnesses. The prosecutor is not required to produce the witnesses listed with the information at trial, *Wolford*, 189 Mich App at 483; but, the prosecutor has a continuing duty to disclose further res gestae witnesses as they become known pursuant to MCL 767.40a(2). Then, not less than 30 days before trial, the prosecutor must provide a defendant with a list of endorsed witnesses that the prosecutor "intends to produce" at trial. MCL 767.40a(4). At this point, by endorsing witnesses for trial, the prosecutor notifies a defendant of a more defined plan of action, moving beyond simple disclosure of known res gestae witnesses and those known witnesses that "might" be called. That is, the fact that the prosecutor "intends" to produce a witness at trial establishes that the prosecutor has the production of this witness "in mind as a purpose or goal." *Merriam-Webster's Collegiate Dictionary* (2014). Once a prosecutor endorses a witness, the prosecutor becomes obligated to exercise due diligence to produce that witness for trial. *Eccles*, 260 Mich App at 388.

This list of endorsed witnesses is by no means set in stone nor is it a guarantee that a witness will be produced at trial.[4] The prosecutor may seek to remove a witness from the witness list, but to do so the prosecutor must either make a showing of good cause or obtain a stipulation from defendant. MCL 767.40a(4); *Duenaz*, 306 Mich App at 104. By the same token, witnesses not endorsed cannot be called at trial unless the defendant agrees or the prosecutor adds to the list of endorsed witnesses "upon leave of the court and for good cause shown." MCL 767.40a(4); *Callon*, 256 Mich App at 327. In other words, by endorsing witnesses, the prosecutor commits to a course of conduct that can only be altered in accordance with MCL 767.40a(4) "upon leave of the court and for good cause shown or by stipulation of the parties."

Nowhere in this detailed framework does the statute provide for the possibility that a witness may be "endorsed in the alternative." Rather, the statute is quite plain: a prosecutor either intends to call a witness, in which case the witness is endorsed under MCL 767.40a(3), or the prosecutor does not intend to call a witness, in which case the witness is not endorsed under MCL 767.40a(3) and the witness may only be called if the witness list is amended in the manner provided for in MCL 767.40a(4). There is no in-between "alternative" witness who may or may

---

[4] We note that the prosecutor's responsibility is to "produce" the endorsed witness at trial. See MCL 767.40a(3). While the prosecutor has an obligation to make endorsed witnesses available, the prosecutor need not actually call every endorsed witness at trial. See *People v Joseph*, 24 Mich App 313, 320; 180 NW2d 291 (1970). See also MCR 6.416 ("Subject to the rules in this chapter and to the Michigan rules of evidence, each party has discretion in deciding what witnesses and evidence to present.").

not be produced on the whim of the prosecutor. Indeed, the prosecutor's proposed "and/or" designation would wholly subvert the plain requirements of the statute by creating out of whole cloth a new category of "alternative" witnesses who are handily endorsed should the prosecutor choose to call such a witness, but conveniently not endorsed should the prosecutor decide not to produce the witness. In other words, the prosecutor proposes an end-run around the statutory requirements that would allow the prosecutor to add or delete witnesses from its list of "endorsed" witnesses without a showing of good cause or the agreement of the defendant. Such a practice is not contemplated by the statute, and it is a violation of the clearly articulated manner for adding witnesses to, and removing witnesses from, the endorsed witness list as provided in MCL 767.40a(3) and (4). Consequently, we hold that when providing a defendant with the list of witnesses the prosecutor "intends to produce" at trial, a witness may not be "endorsed in the alternative" as an "and/or" witness.

It follows that in this case, as a matter of law, Dawning could not have been "endorsed in the alternative." Instead, given the "X" next to Dawning's name on the witness list, it is plain that the prosecutor designated Dawning as a witness the prosecutor intended to produce at trial pursuant to MCL 767.40a(3). Consequently, to remove her name from the witness list, the prosecutor was required to comply with MCL 767.40a(4). Under MCL 767.40a(4), given defendant's objection to the removal of Dawning's name from the witness list, the prosecutor was required to make a showing of good cause. See *Duenaz*, 306 Mich App at 104. By allowing Dawning's removal from the witness list without making a determination of good cause, the trial court abused its discretion by failing to operate in the legal framework set forth in MCL 767.40a. See *Hine*, 467 Mich at 251.

Having found that the trial court failed to operate within the statutory framework, the question becomes whether this error entitles defendant to appellate relief. In this respect, to warrant reversal for a violation of MCL 767.40a, "defendant must show that he was prejudiced by noncompliance with the statute." *Duenaz*, 306 Mich App at 104. See also *Callon*, 256 Mich App at 328. Moreover, as the appellant in this case, defendant bears the burden of providing this Court "with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Ultimately, "[e]rror in the admission or exclusion of evidence does not warrant reversal if, in light of the other properly admitted evidence, it does not affirmatively appear more probable than not that a different outcome would have resulted without the error. *Duenaz*, 306 Mich App at 105.

On the record before us, we are persuaded that defendant has not established the prejudice necessary to warrant reversal. In particular, ultimately, the error in this case is the trial court's failure to make a determination of "good cause" before allowing removal of Dawning from the witness list. However, while the trial court did not reach the issue, the prosecutor presented the trial court with information regarding "good cause," including the prosecutor's exercise of due diligence insofar as there was a witness detainer for Dawning, the prosecutor could not locate Dawning even after "looking high and low for her for some period of time," and, according to the prosecutor, Dawning had "made it clear . . . she was not going to be

-6-

found."[5]  *Canales*, 243 Mich App at 577 ("The inability of the prosecution to locate a witness listed on the prosecution's witness list after the exercise of due diligence constitutes good cause to strike the witness from the list.").  In contrast, defendant did not request factual development regarding the issue of good cause either during or after trial, *Elston*, 462 Mich at 762; *Steele*, 283 Mich App at 482; and, on appeal, defendant points to nothing in the lower court record to suggest that the prosecutor lacked good cause for removing Dawning from the prosecution's witness list.  Absent some evidence to refute the prosecutor's assertions regarding Dawning, there is no reason to disbelieve the prosecutor's representations as an officer of the court bound by a duty of candor.  See *People v Garland*, 286 Mich App 1, 8; 777 NW2d 732 (2009).  And, on this record, defendant has not shown that he was prejudiced by the trial court's failure to actually address the issue of good cause.

Moreover, although defendant claims on appeal that he was "severely prejudiced by [Dawning's] failure to appear for trial," there is no evidence regarding how Dawning would have testified.  It is known from other witnesses' testimony that Dawning was among those who joined Lashay in going to confront Johnetta; but there is no indication of the testimony she would have offered, meaning that it cannot be concluded on this record that defendant would have benefited from her testimony.  Once again, defendant made no effort to expand the trial court record to establish the factual basis of his assertion that he was prejudiced by Dawning's failure to appear.[6]  Cf. *Elston*, 462 Mich at 762.  Further, while we agree with defendant that the prosecutor's "and/or" designation was specious, we note that this designation was made weeks before trial.  If defendant had concerns about ensuring Dawning's presence at trial, he could have objected to the prosecutor's witness list before trial or named Dawning as a defense witness and even requested the prosecutor's assistance in locating Dawning pursuant to MCL 767.40a(5).  Yet, defendant did not ask for the prosecutor's assistance before trial and defendant waited until

---

[5] In addition to these representations about due diligence, the prosecutor also noted the likelihood that Dawning's Fifth Amendment right against self-incrimination would prevent the prosecutor from eliciting her testimony.  See *People v Steanhouse*, 313 Mich App 1, 16; 880 NW2d 297 (2015) ("Because [the witness] invoked his Fifth Amendment privilege against self-incrimination and refused to testify, neither the prosecution nor the defense could call [him] as a witness.").

[6] To establish prejudice, defendant generally notes the jury's inability to assess Dawning's credibility and demeanor, and in doing so he compares his case to *People v Bean*, 457 Mich 677; 580 NW2d 390 (1998); *People v Dye*, 431 Mich 58; 427 NW2d 501 (1988); and *People v James (After Remand)*, 192 Mich App 568; 481 NW2d 715 (1992).  However, while these cases discussed the prosecution's exercise of "due diligence" in producing a witness, this discussion took place in the context of the confrontation clause and whether the prosecutor could introduce prior testimony of the respective witnesses under MRE 804(b)(1).  In other words, while the witness did not appear, the jury was presented with past testimony from the witness and left unable to assess the witness's demeanor first-hand.  This did not occur in this case.  Rather, Dawning's failure to testify meant that the jury did not hear any evidence from her.  Thus, there is no merit to defendant's suggestion that prejudice arose because the jury could not evaluate Dawning's credibility.

trial to offer any sort of objection to the "alternative" witness designation. Cf. *Callon*, 256 Mich App at 328 (concluding that by "waiting to object" to prosecutor's witness list defense counsel was engaging in "the 'gamesmanship' that MCL 767.40a was designed to preclude"). Even when defendant did object during trial to the removal of Dawning's name from the prosecutor's witness list, defendant gave no indication that he wished to call Dawning and he did not ask for a continuance to locate Dawning or to otherwise prepare for the change to the prosecutor's witness list. See *People v Herndon*, 246 Mich App 371, 403; 633 NW2d 376 (2001); *People v Cyr*, 113 Mich App 213, 224; 317 NW2d 857 (1982). These facts simply do not support the assertion that defendant was prejudiced by the prosecutor's failure to produce Dawning.

Finally, we note that defendant argues on appeal that the trial court should have provided a missing witness instruction to the jury pursuant to M Crim JI 5.12. However, defendant failed to request the missing witness jury instruction below and thus failed to preserve the issue for appellate review. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). "This Court reviews unpreserved challenges to jury instructions for plain error affecting a party's substantial rights." *People v Jackson*, 313 Mich App 409, 421; 884 NW2d 297 (2015). See also MCL 768.29. To avoid forfeiture of an unpreserved claim, "the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). "Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id.*

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (citation omitted). "Accordingly, jury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). At issue in this case is the missing witness instruction under M Crim JI 5.12, which would have allowed the jury to infer that Dawning's testimony would have been unfavorable to the prosecution's case. In particular, the instructions states:

> *[State name of witness]* is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case.

A missing witness instruction should be given if the trial court finds a lack of due diligence on the part of the prosecutor in seeking to produce an endorsed witness. *Eccles*, 260 Mich App at 388-389.

On the facts of this case, defendant has not shown plain error in the trial court's failure to sua sponte give a missing witness instruction. Such an instruction was not clearly or obviously required in this case because, as we have discussed, it is not apparent from the record that the prosecutor failed to exercise due diligence. See *id.* Cf. *People v Young*, 472 Mich 130, 143; 693 NW2d 801 (2005). Moreover, given the considerable evidence that defendant brought a gun to the scene and fired his weapon repeatedly, we cannot conclude that a missing witness instruction

would have affected the outcome of the proceedings, particularly when defendant had been charged as both a principal and aider or abettor. There were numerous eyewitnesses accounts as well as physical evidence to support the conclusion that defendant repeatedly fired his weapon, and we fail to see that the outcome would have been different had the jury, instructed under M Crim JI 5.12, chosen to infer that testimony from Dawning, i.e., defendant's girlfriend, would have been unfavorable to the prosecution. Overall, defendant has not shown plain error, and he is not entitled to relief based on the trial court's failure to give a missing witness instruction.

## II. JURY INSTRUCTIONS

Next, defendant argues that the trial court erred by failing to instruct the jury on AWIGBH as a necessarily included lesser offense of AWIM.

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013). Even when instructional error occurs, "[r]eversal is warranted only if after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Id.* (citation and quotation marks omitted). The defendant bears the burden of "establishing that the error undermined the reliability of the verdict." *People v Hawthorne*, 474 Mich 174, 184; 713 NW2d 724 (2006).

"It is the function of the trial court to clearly present the case to the jury and instruct on the applicable law." *People v McKinney*, 258 Mich App 157, 162; 670 NW2d 254 (2003). "Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense." *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004) (citations omitted). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). See also *People v Reese*, 466 Mich 440, 447; 647 NW2d 498 (2002). Failure to instruct on a lesser included offense undermines reliability in the verdict only "when the evidence 'clearly' supports the lesser included instruction, but the instruction is not given." *Cornell*, 466 Mich at 365. In analyzing whether the evidence "clearly" supports the instruction, we must consider the "entire cause," including evidence that has been offered to support the greater offense. *Id.*

AWIGBH is a necessarily included lesser offense of AWIM. *People v Brown*, 267 Mich App 141, 150-151; 703 NW2d 230 (2005). These offenses "are distinguishable from each other by the intent required of the actor at the time of the assault." *Id.* at 148. That is, AWIM requires an actual intent to kill that is not a part of AWIGBH.[7] *Id.* at 151. See also *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

---

[7] We disagree with the prosecution's assertion that the element of intent was not "disputed" at trial. See *Reese*, 466 Mich at 447. While defendant primarily argued at trial that he was not the

In this case, defendant was charged with five counts of AWIM. Each count was related to a different complainant. At trial, defendant asked the trial court to instruct the jury on AWIGBH as a lesser included offense with respect to all five counts of AWIM. The trial court granted defendant's request with respect to Johnetta and Chinetta, the two victims who were not shot during the events. In contrast, the trial court denied the request with respect to Frieda, Demetrius, and Tkira, all of whom suffered gunshot wounds.

Even assuming the trial court's decision not to give the lesser included instruction on AWIGBH was erroneous, defendant has not met his burden of establishing that this error undermined the reliability of the jury's verdict with respect to the AWIM convictions. The evidence presented at trial demonstrated that defendant brought a gun to the scene. He then stood outside of the home, shooting at the front door where Demetrius and Tkira were seen standing during most of the melee. Several spent casings, from defendant's gun, were found outside on the ground in areas defendant was seen standing. With respect to the shooting of Frieda, both Chinetta and Frieda testified that defendant pointed his gun directly at Frieda and shot her. Indeed, Demetrius, Tkira, and Frieda all suffered gunshot wounds.[8] And, of course, a child in the home with Demetrius and Tkira was killed. After the shooting, defendant fled the scene, he stated that he shot "the momma and the daughter," and he attempted to conceal his weapon when he gave his backpack containing his gun to a neighbor. Considering the entire cause, the evidence does not "clearly" support the conclusion that defendant only intended AWIGBH; rather, it demonstrates that defendant acted with the specific intent to kill Frieda, Demetrius, and Tkira.[9] On this record, failure to give the requested instruction cannot be said to have undermined the reliability of the verdict.

---

shooter responsible for Amiracle's death or the other victims' injuries, defense counsel did question the intent involved. Using Frieda as an example, defense stated that Frieda "had fell [sic] on the ground, she was immobile and she's wounded in the leg. If he was trying to kill them, wouldn't you shoot them in the head[?] That's not how she was shot. She was shot in an exchange of gunfire."

[8] In contending that the jury would have returned a lesser verdict relating to these victims, defendant relies heavily on the fact that the jury returned a lesser verdict with respect to the charges relating to Chinetta and Johnetta. However, the evidence was noticeably less conclusive with regard to Chinetta and Johnetta in light of distinguishing circumstances between the victims, including the lack of injury suffered by Chinetta and Johnetta. We note that actual injury—while admissible of evidence of an actor's intent—is not an element of either AWIM or AWIGBH. See *Stevens*, 306 Mich App at 638-629; *Brown*, 267 Mich App at 147. We do not suggest that injury can be used to conclusively distinguish between an actor's intent relative to AWIM and AWIGBH. Nonetheless, on the facts of this case, considering the entire cause and the differences between the respective victims, we are not persuaded that the jury's lesser finding of AWIGBH relating to Johnetta and Chinetta undermines the reliability of the AWIM verdicts returned with respect to Frieda, Demetrius, and Tkira.

[9] "Intent to kill may be inferred from all the facts in evidence," including use of a deadly weapon, taking aim at a victim, injury to the victim, evidence of flight and attempts to hide evidence. *People v Henderson*, 306 Mich App 1, 11-12; 854 NW2d 234 (2014).

-10-

Affirmed.

/s/ Michael J. Talbot
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra