# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RENALDO RAMON PRESSWOOD,

        Defendant-Appellant.

UNPUBLISHED
October 18, 2018

No. 339360
Genesee Circuit Court
LC No. 15-037810-FC

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), for which the trial court sentenced him to life imprisonment. Defendant appeals as of right. We affirm.

Defendant was convicted of using his car to hit and run over Robert Mayers, causing his death, on August 3, 2014, outside a Flint nightclub. In the early morning hours, defendant drove his car to the after-hours club; Mayers was also at the club. The prosecution presented evidence that defendant and Mayers cordially conversed in the parking lot but, at some point, an argument ensued between them. The argument ended, and witnesses believed that it had ended amicably. However, after the parties were in their respective cars, defendant rammed his car into Mayers's car. Mayers got out of his car, walked to defendant's car, punched defendant through the open driver's side window, and then ran toward the club. Defendant put his car in the drive gear, chased Mayers down the sidewalk, drove through a fence into a parking lot, and ran over Mayers. Defendant turned around and ran over Mayers a second time before fleeing the scene. The police investigation quickly led to defendant, who initially claimed to be at a different location at the time of the incident. At trial, the defense admitted that defendant was at the club and ran over Mayers, but denied that the killing was premeditated and intended, asserting that defendant had not used his car as a weapon, but used it to quickly leave the area after being punched by Mayers.

## I. JURY INSTRUCTIONS

Defendant first argues that the trial court abused its discretion by denying his request for jury instructions on the necessarily included lesser offenses of voluntary manslaughter and involuntary manslaughter. We disagree.

-1-

Although we review questions of law pertaining to jury instructions de novo, "a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).

MCL 768.32(1) permits instruction on necessarily included lesser offenses. *People v Reese*, 466 Mich 440, 446; 647 NW2d 498 (2002). Both voluntary manslaughter and involuntary manslaughter are necessarily included lesser offenses of murder, distinguished by the element of malice. *People v Mendoza*, 468 Mich 527, 533-534, 540-541; 664 NW2d 685 (2003). "Consequently, when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence. *Id*. at 541.

> Reversal of a trial court's jury instruction decision is appropriate only where the offense was clearly supported by the evidence; an offense is clearly supported where there is substantial evidence to support it. [*People v McMullan*, 488 Mich 922; 789 NW2d 857 (2010).]

Malice exists where there is "an act done with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Gillis*, 474 Mich at 138 (citation and quotation marks omitted). In contrast, "[v]oluntary manslaughter requires a showing that (1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009). "[P]rovocation is [that] circumstance that negates the presence of malice." *Mendoza*, 468 Mich at 536.

> The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason; that is, adequate provocation is that which would cause the reasonable person to lose control. [*Roper*, 286 Mich App at 87 (citation and quotation marks omitted).]

Based on the evidence presented at trial, the trial court properly declined to provide a voluntary manslaughter instruction because of the absence of the degree of provocation necessary to mitigate the killing from murder to manslaughter. *Roper*, 286 Mich App at 87. Defendant argues that adequate provocation existed because of "the argument and attack by Mayers." However, the evidence showed that the argument between the parties had ended amicably. Then, after both parties were sitting in their cars, *defendant* rammed his car into Mayers's car. In turn, Mayers then punched defendant through defendant's car window and ran away. While Mayers's conduct may have angered defendant, it was not adequate provocation to move a reasonable person to put his car in drive, chase a person down a sidewalk, hit the person, run over the person, turn around, and run over the person a second time. Defendant has not adequately explained how Mayers having alcohol and drugs in his system is relevant in evaluating defendant's state of mind and conduct of catching up to a fleeing Mayers and driving over him twice. Accordingly, because no reasonable jury could have determined that the

provocation in this matter was adequate to cause a reasonable person to lose control in the manner that defendant did, the trial court did not abuse its discretion by declining to give a voluntary manslaughter instruction.

The trial court also did not err by declining to instruct the jury on involuntary manslaughter. As it relates to this case, if a homicide "was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter." *People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004). Thus, defendant was entitled to an involuntary manslaughter instruction only if a rational view of the evidence would have supported a finding that Mayers's death was caused by an act of gross negligence or an intent to injure, and not malice. Defendant argues that a rational view of the evidence supports that he acted with gross negligence, without malice, because he was merely quickly driving away from the club after being punched by Mayers and did not intend to strike Mayers. There was no evidence, however, to support this theory. To the contrary, the only rational conclusion to be drawn from the evidence, as previously discussed, is that, at a minimum, defendant had "an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Gillis*, 474 Mich at 138 (citation and quotation marks omitted). Jamar Brewer, who was in the car with defendant, testified that, after Mayers punched defendant, defendant put his car in the drive gear, chased Mayers down the sidewalk, drove through a fence, and hit Mayers. Defendant did not stop at that point, but turned around, drove back through the fence, and "ran [Mayers] over again" before fleeing the scene. A club employee similarly testified that Mayers was running toward the club when defendant took off after him, hit Mayers once, "turned around in the . . . church parking lot, and hit [Mayers] again." Considering all the evidence that was presented at trial, no rational juror could conclude that defendant's conduct of running over Mayers two times, after chasing him and driving through a fence to catch up to him, could be characterized as only an act of gross negligence, committed without malice. Consequently, the trial court properly declined to give an involuntary manslaughter instruction.[1]

## II. DEFENDANT'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant raises additional issues challenging the violation of his constitutional right to present a defense, the sufficiency of the evidence, the effectiveness of

---

[1] We further note that the jury was instructed on second-degree murder as a lesser offense of first-degree murder, but defendant was convicted of first-degree murder. That the jury was convinced that defendant acted with premeditation and deliberation, thereby rejecting the intermediate offense of second-degree murder in favor of first-degree murder, reflects an unwillingness to convict on an even lesser included offense. See *People v Wilson*, 265 Mich App 386, 396; 695 NW2d 351 (2005) (recognizing that where the jury rejects an intermediate lesser offense "in favor of the greater offense[,]" any alleged error in not instructing the jury on lesser offenses was harmless).

defense counsel's assistance, the prosecutor's conduct, and the trial court's admission of evidence. None of these issues have merit.

Because defendant failed to object at trial to either the prosecutor's conduct or the admission of the challenged evidence, these claims are unpreserved. Although defendant requested instructions on voluntary manslaughter and involuntary manslaughter, which the trial court denied, he did not contend that such instructions were necessary to preserve his constitutional right to present a defense, leaving his constitutional claim unpreserved. We therefore review these claims for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "Substantial rights are affected when the defendant is prejudiced, meaning the error affected the outcome of the trial." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). Because defendant failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial or request for an evidentiary hearing, our review of that issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

## A. RIGHT TO PRESENT A DEFENSE

In this issue, defendant argues that the trial court violated his constitutional right to present a defense when it precluded the jury from considering the lesser offenses of voluntary manslaughter and involuntary manslaughter. "A defendant has a constitutionally guaranteed right to present a defense[.]" *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), citing US Const Am VI; Const 1963, art 1, § 20. "Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002). A defendant, however, must still comply with procedural and evidentiary rules established to assure fairness and reliability in the verdict. *Yost*, 278 Mich App at 379.

We have already rejected the underlying claim for this challenge in the context of defendant's allegation of instructional error. This argument reiterates defendant's earlier argument, but is presented as a claim of constitutional error. As previously discussed, a rationale view of the evidence did not support either a voluntary manslaughter or involuntary manslaughter instruction, and therefore, the trial court did not err by denying defendant's request for these instructions. Because a rational review of the evidence did not support the requested manslaughter instructions, the refusal to give them did not prevent defendant from presenting a viable defense theory. Accordingly, defendant was not denied his right to present a defense, and therefore, is not entitled to appellate relief.

## B. SUFFICIENCY OF THE EVIDENCE

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and discern whether a rational trier of fact could conclude "that the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences

and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

First-degree premeditated murder requires proof that the defendant "intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001). Defendant contends only that there was insufficient evidence to establish the requisite element of premeditation. Premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *People v Oros*, ___ Mich ___, ____; ___ NW2d ___ (2018) (Docket No. 156241); slip op at 10 (quotation marks and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, it is often said that premeditation and deliberation require only a brief moment of thought or a matter of seconds[.]" *Id*. (quotation marks, brackets, and citations omitted). "The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances." *Id*. at ___; slip op at 11 (citation and quotation marks omitted.) The following factors may be considered to establish premeditation: "(1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[,]" which can be inferred on the basis of the record evidence. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Viewed in a light most favorable to the prosecution, the evidence that after Mayers punched defendant and was running away, defendant put his car in drive, chased Mayers down a sidewalk to catch up to him and, after running over Mayers the first time, drove through a fence, turned around, and ran over him a second time before fleeing the scene, was sufficient for a jury to have found premeditation beyond a reasonable doubt. A jury could have reasonably inferred from this evidence that at several points, including when defendant turned his car around before running over Mayers a second time, defendant had time to take a "second look" at his actions. In addition, evidence demonstrating that after the crime, defendant attempted to hide the car and lied to the police about his involvement further supports a finding of premeditation. Consequently, considering the evidence of the nature and circumstances surrounding the killing, a jury could have rationally inferred that defendant acted on a decided course of action rather than an unplanned impulse.

Defendant argues that the evidence was insufficient to sustain his conviction because the prosecution witnesses' testimony was not credible, Brewer was intoxicated on the night of the offense and should not be believed, and because the autopsy report did not indicate that Mayers was run over more than once, as the witnesses claim. In making these arguments, however, defendant does not acknowledge that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution, *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012), that this deferential standard of review is the same whether the evidence is direct or circumstantial, *Nowack*, 462 Mich at 400, and that it is well established that "[c]ircumstantial evidence and reasonable inferences arising from that evidence

can constitute satisfactory proof of the elements of a crime." *Id.* (citation omitted). Defendant's challenges are related to the weight of the evidence rather than its sufficiency. See *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977) (recognizing that "the credibility of witnesses is a matter of weight, not sufficiency.) Moreover, this Court will not interfere with the trier of fact's role of determining issues of weight and credibility related to the record evidence. *Unger*, 278 Mich App at 222. The evidence was sufficient to sustain defendant's conviction of first-degree premeditated murder.

Within this issue, defendant contends that by presenting Brewer as a witness, the prosecutor gave the jury "misleading information" that "presented a materially false impression." Defendant has not, however, provided any proper analysis supporting this claim. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Accordingly, this unpreserved and unsupported prosecutorial misconduct claim does not warrant reversal. *Carines*, 460 Mich at 763.

## C. EFFECTIVE ASSISTANCE OF COUNSEL

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.* "[T]he defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). Defendant "has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

### 1. FAILURE TO CALL WITNESSES

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy," *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). A defense counsel's failure to present a witness can constitute ineffective assistance only where it "deprives the defendant of a substantial defense." *Russell*, 297 Mich App at 716. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted).

Defendant asserts that defense counsel was ineffective for failing to call witnesses, whose names he provided to defense counsel, who would have testified about defendant's "traits" when he is angry, which would have supported that defendant was provoked when Mayers struck him. Although defendant asserts that defense counsel should have called these witnesses, defendant has not identified the witnesses, provided any witness affidavits, or identified any other evidence

of record establishing that these witnesses were willing to testify at trial and could have provided favorable testimony.[2] Absent such a showing, defendant has not established that he was prejudiced by trial counsel's failure to call the proposed witnesses at trial.

## 2. FAILURE TO ADVISE DEFENDANT TO TESTIFY AT TRIAL

"A defendant's right to testify in [his] own defense stems from the Fifth, Sixth and Fourteenth amendments of the United States Constitution." *People v Thorne*, 322 Mich App 340, 567; 912 NW2d 560 (2017) (citation and quotation marks omitted). The "decision to testify or not to testify is a strategic one best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla–Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id*. (quotations and citation omitted).

We reject defendant's claim that defense counsel was ineffective for advising him not to testify and not calling him as a witness because his testimony would have supported the defense. Defendant acknowledged on the record that he and defense counsel discussed whether defendant should testify. Defendant and defense counsel had discussions about the matter on "many" occasions. Defendant further acknowledged that he had "an opportunity to think long and hard" about whether he would testify, and that he and defense counsel had discussed "both the pros and cons, the negative aspects of testifying perhaps, and also the positive aspects[.]" And when asked if he had made a decision, defendant stated: "I don't want to testify."

While the record does not disclose what specific advice defense counsel may have given regarding whether defendant should testify, defendant does not claim that he was unaware of his right to testify, or that defense counsel coerced him into not testifying. Given that the discussions included the "pros and cons" of testifying, it can be presumed that, for strategic reasons, counsel advised defendant that it would be against defendant's best interests to testify. It is also apparent that defendant was aware that it was his final decision whether to testify or not to testify, and he acknowledged on the record that he understood that he had an absolute right to testify or not testify. As previously referenced, the decision whether to call defendant as a witness was a matter of trial strategy, *Russell*, 297 Mich App at 716, for which counsel has "wide discretion[,]" *Heft*, 299 Mich App at 83, and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy in counsel's advice that defendant not testify.

## 3. FAILURE TO OBJECT

---

[2]Even assuming this proposed testimony was admissible, the provocation required to mitigate a killing from murder to voluntary manslaughter is what would affect a *reasonable* person, not just defendant. *Roper*, 286 Mich App at 87.

In his last ineffective assistance of counsel claim, defendant makes additional cursory complaints about what counsel failed to do, without providing any proper analysis. Specifically, defendant complains that defense counsel should have objected to the expert "classification" of the prosecution's expert witnesses and to "all of the lay person's testimony" because they were intoxicated at the time of the incident and their statements were inconsistent. Defendant does not, however, identify any legal ground on which defense counsel could have lodged successful objections. As previously noted, defendant is required to do more than merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. *Kelly*, 231 Mich App at 640-641. Consequently, defendant's remaining claims of ineffective assistance of counsel are abandoned. *McPherson*, 263 Mich App at 136.

## D. PROSECUTOR'S CONDUCT – FALSE TESTIMONY

Defendant next argues that the prosecutor knowingly presented "false testimony" from Brewer, a club employee, and two additional eyewitnesses. A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). A conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict. *Smith*, 498 Mich at 476.

The arguments made by defendant do not establish that the prosecutor knowingly used false testimony to obtain defendant's conviction. To support his claim, defendant provides only one citation to the record, which is Brewer's preliminary examination testimony that Mayers tried to punch defendant though the window. This testimony does not support defendant's claim that the prosecution's four eyewitnesses "lied throughout their initial statements," and, more significantly, that the prosecutor engaged in misconduct by knowingly presenting false testimony. Although there may have been instances when the eyewitnesses' trial testimony differed from their statements or the testimony of other witnesses, there is no indication that the prosecutor sought to conceal those inconsistencies. Indeed, the record shows that defense counsel cross-examined the eyewitness at length about their observations and police statements. Further, the fact that testimony was adduced at trial that conflicted with other witnesses' testimony does not lead to the conclusion that the prosecutor knowingly used perjured testimony.

Similarly, the fact that the eyewitnesses drank alcohol in the hours leading up to when Mayers died does not mean that their testimony was false. Indeed, the jury was well aware of the intoxication evidence. Defense counsel questioned the witnesses multiple times about how much they had to drink, and if they were intoxicated or "high" that night. In closing argument, the prosecutor clearly acknowledged that the witnesses had been drinking, stating: "You learned that everyone had been drinking that day[.]" Defendant's arguments do not involve an issue of perjury, but of witness credibility. Defense counsel explored the credibility problems with the eyewitnesses' testimony, including the fact that they were drinking that night. The jury was free to believe or disbelieve all or any portion of the witnesses' trial testimony. *Unger*, 278 Mich App at 222.

Within this issue, defendant also contends that by presenting these witnesses, the prosecutor used "deliberate deception of a court" by presenting testimony that was not credible. "A fraud is perpetrated on the court when some material fact is concealed from the court or some material misrepresentation is made to the court." *Matley v Matley (On Remand)*, 242 Mich App 101, 102; 617 NW2d 718 (2000) (quotation marks and citation omitted). However, it is clear that defendant has not shown that the prosecutor sought to make a material misrepresentation to the court. Again, both parties questioned the witnesses about their observations and statements to the police. Further, defense counsel, the trial court, and the jury were all aware that the witnesses had been drinking before Mayers was killed. Defendant has not demonstrated that material facts were concealed from the court (or the jury). We therefore reject defendant's unpreserved and unsupported claims of prosecutorial misconduct.

### E. TRIAL COURT ERROR – FALSE TESTIMONY

As previously discussed, defendant has not demonstrated that the prosecutor knowingly presented false testimony, or that the eyewitnesses' testimony was actually false. In this issue, defendant adds the argument that because the witnesses testified that defendant ran over Mayers twice, although the autopsy report does not corroborate that Mayers was run over more than once, the witnesses' testimony was false. Again, we disagree.

Preliminarily, defendant has not provided a citation to the record that supports that the medical examiner definitively concluded that Mayers was hit only one time. The medical examiner testified that Mayers suffered numerous serious injuries, including multiple blunt force injuries, skin tears, and fractures, which were consistent with a pedestrian being hit by a car and dragged. His determination of the cause of death was "[m]ultiple blunt force injuries to the pedestrian [resulting from a] motor vehicle collision" and the manner of death was homicide. He explained how he gathered the information to make his determination, and testified that he was told that Mayers was hit by a car and "based on the history that he ha[d], the car was used to pursue this person during the altercation." Clearly, in this case, the medical examiner was not presented to testify if Mayers was hit once or twice, but to testify about the injuries he suffered as a result of being "hit by a car," and defense counsel did not question him about that point.

Further, even if the medical examiner had concluded that Mayers was hit only once, that finding would not lead to the conclusion that the eyewitnesses, one of whom was defendant's good friend, testified falsely about their own observations. Rather, the matter would still be an issue of witness credibility for the jury to decide. It is well established that "absent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility" for the jury's view. *People v Lemmon*, 456 Mich 625, 641; 576 NW2d 129 (1998). Thus, defendant has not argued a logical ground on which the trial court would have properly precluded these witnesses from testifying about their own observations. Accordingly, defendant is not entitled to a new trial based on his unpreserved and unsupported claim that the trial court abused its discretion and denied defendant due process by allowing false testimony.

### F. PROSECUTOR'S CONDUCT – DISPLAY OF CRIME SCENE DIAGRAM

We reject defendant's last argument that the prosecutor engaged in misconduct, which denied him a fair trial and due process, when she left a crime scene diagram on display for the duration of the trial. Preliminarily, defendant has not provided any citation to the record concerning the crime scene diagram, but mentions that it was used during the testimony of forensic scientist Keith Lamont. On the fourth day of trial, during the testimony of Lamont, who was qualified as an expert in trace evidence and physical match identification, he used a PowerPoint that contained slides illustrating his findings. It appears that the last slide that Lamont discussed, which he noted was at the end of his Power Point, was a comparison of two paint chips. Defendant does not explain why or how the prosecutor used a longer view of a slide comparing paint chips to "coach" future witnesses or taint the jury. Additionally, the prosecutor's next witness was Flint Police Department Sergeant Jason Groulx, who was qualified as an expert in traffic crash reconstruction. Immediately after the conclusion of Lamont's testimony, the prosecutor informed the trial court that she had "a bit of a technology change for our next witness." This leads to the logical conclusion that Lamont's PowerPoint was not left on display, but taken down for Sergeant Groulx's materials, which actually included a crime scene drawing.

And, even if it was actually Sergeant Groulx's crime scene drawing that was the exhibit left on display, this issue still has no merit. The only witness who testified after Sergeant Groulx was Michigan State Police Detective Tiffany Watson. Indeed, the chief prosecution witnesses, including the eyewitnesses, testified on the second and third days of trial, i.e., before the crime scene drawing would have been left on display. Thus, in addition to failing to explain how the prosecutor improperly coached witnesses or tainted the jury with an alleged extended display of a crime scene drawing, defendant also fails to mention that there was only one, and at most two witnesses, who would have even observed the extended display of the drawing or PowerPoint while testifying. Accordingly, defendant is not entitled to appellate relief.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

-10-