*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MELISSA ANNETTE MANNARINO,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 343747
Wayne Circuit Court
LC No. 17-008493-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MELISSA ANNETTE MANNARINO,

        Defendant-Appellant.

No. 343748
Wayne Circuit Court
LC No. 17-007450-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MELISSA ANNETTE MANNARINO,

        Defendant-Appellant.

No. 346271
Wayne Circuit Court
LC No. 18-000402-01-FC

---

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant appeals her convictions in three separate cases that were consolidated for jury trial. The jury convicted defendant of a total of three counts of armed robbery, MCL 750.529, and one count each of unlawful imprisonment, MCL 750.349, larceny of a firearm, MCL 750.357, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 132 to 200 months for two of the armed robbery convictions and 120 to 180 months for the third, 5 to 15 years for the unlawful imprisonment conviction, and two to five years for the larceny conviction, and a two-year prison term for the felony-firearm conviction, to be served consecutive to the sentence for its attendant armed robbery conviction. Defendant appeals by right in Docket Nos. 343747 and 343748, and by leave granted in Docket No. 346271.[2] We affirm in all three appeals.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from three separate armed robberies of male victims who were lured to a house in Detroit under the pretext that they were going there to meet defendant for an arranged sexual encounter. Defendant greeted each victim when he arrived and let him inside the house. Once inside, the victims were attacked and robbed by two male codefendants, Joseph Bryant[3] and Jamaine Conselyea. The robberies occurred on July 30, August 1, and August 2, 2017.

When EE, the victim of the July 30 robbery, arrived at the house, defendant told him where to park and invited him into the house. She then left the room, after which Bryant and Conselyea, who were armed with a pistol and rifle, robbed EE.

When DS, the victim of the August 1 robbery, arrived at the house, he observed defendant and Bryant on the front porch. Defendant greeted him and gave false names for herself and Bryant. After DS entered the house, Conselyea emerged with a rifle and Bryant held a revolver to DS's head; they robbed and assaulted him while defendant was at the back of the room. Bryant then went outside to take items from DS's car, during which time defendant pointed the rifle at DS and Conselyea held the revolver to his head, pulling the trigger several times and telling DS that there was "a bullet in there somewhere." Defendant wrote down personal identification numbers for DS's banking cards after Bryant forced him to provide them. Bryant struck DS in the face with the revolver while defendant was present, causing DS serious injury.

When MJ, the victim of the August 2 robbery, arrived at the house, defendant greeted him, invited him in, and then walked to the back of the house. Bryant and Conselyea emerged,

---

[1] See *People v Mannarino*, unpublished order of the Court of Appeals, entered March 4, 2019 (Docket No. 346271) (granting defendant's application for delayed appeal in Docket No. 346271 and consolidating all three appeals).

[2] See *id*.

[3] Bryant is the father of defendant's son and they were living together at the time of the offenses.

holding guns, and robbed MJ of his phone, wallet, and concealed-carry pistol. They then took MJ to an abandoned house to await business hours during which they could cash MJ's uncashed payroll check, and they subsequently forced him to drive them and defendant (who by then had joined them at the abandoned house) to various stores and banks to cash the check and to make purchases with MJ's credit cards. Defendant was armed with a revolver during the drive.

Bryant and Conselyea both entered guilty pleas to two counts of armed robbery, one count of unlawful imprisonment, and two counts of felony-firearm. The defense theory at trial was that defendant's relationship with Bryant was an abusive one, and that he had forced her to participate in the offenses under duress. At trial, the prosecution introduced several photographs from defendant's and Bryant's phones depicting them posing together with various firearms, including the revolver taken from MJ.

Defendant was convicted and sentenced as described. These appeals followed. In Docket Nos. 343747 and 343748, defendant moved this Court to remand for a *Ginther*[4] hearing regarding her trial counsel's effectiveness, which this Court denied "without prejudice to a case call panel of this Court determining that remand is necessary" on full review.[5]

## II. ADMISSION OF PHOTOGRAPHS

Defendant argues that the trial court erred by allowing the prosecution to introduce at trial several photographs depicting her and Bryant together handling and displaying various firearms. We disagree. We review for an abuse of discretion a trial court's decision to admit photographic evidence. *People v Davis*, 320 Mich App 484, 488; 905 NW2d 482 (2017), vacated in part on other grounds 503 Mich 984 (2019). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes. *Id*.

The photographs were obtained from defendant's and Bryant's cell phones. Some were taken in March 2017, approximately six months before the charged offenses.[6] The photos showed defendant and Bryant together, in various poses, while one or both of them held firearms. In many of the photos, defendant and Bryant are smiling, and some depict defendant or Bryant with their arms around each other. Defendant argued before the trial court that the photos were irrelevant and unduly prejudicial. The trial court disagreed, finding that the photos were relevant to rebut defendant's assertion of the defense of duress and were not unduly prejudicial.

In *Davis*, 320 Mich App at 488, this Court explained:

> Evidence is generally admissible if it is relevant, MRE 402, i.e., if it has "any tendency to make the existence of any fact that is of consequence to the

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] See *People v Mannarino*, unpublished order of the Court of Appeals, entered March 11, 2019 (Docket Nos. 343747, 343748).

[6] Others were taken contemporaneously with the charged offenses.

determination of the action more probable or less probable than it would be without the evidence," MRE 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. . . . The proper question is "whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Id.* [Citation omitted.]

With regard to photographic evidence, our Supreme Court has stated that photographs "that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded" if they are not relevant to a material issue and "serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused." *People v Mills*, 450 Mich 61, 77; 537 NW2d 909 (1995), mod on other grounds 450 Mich. 1212; 539 NW2d 504 (1995), quoting *People v Eddington*, 387 Mich 551, 562-563; 198 NW2d 297 (1972).

We agree with the trial court that the photographs were relevant to defendant's duress defense. To successfully establish the defense of duress, a defendant must show (1) threatening conduct sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm, (2) the conduct in fact caused such fear of death or serious bodily harm, (3) the fear or duress was operating upon the mind of the defendant at the time of the alleged act, and (4) the defendant committed the act to avoid the threatened harm. *People v Lemons*, 454 Mich 234, 247; 562 NW2d 447 (1997). Defendant's theory at trial was that her relationship with Bryant was abusive and that she participated in the offenses only because of threats from Bryant. Thus, the nature of defendant's relationship with Bryant was a matter of consequence to the determination of the action. The photos were probative of the nature of that relationship, as well as of defendant's willingness to voluntarily participate in conduct involving firearms. The photographs showed defendant and Bryant together on multiple occasions, apparently in playful moods, while handling firearms, and were probative of whether defendant was truly an unwilling participant in the offenses and would not have handled a gun or participated in armed robbery unless threatened by Bryant.

Further, the trial court did not abuse its discretion by ruling that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice under MRE 403. *Davis*, 320 Mich App at 488. Given defendant's duress defense, the nature of defendant's relationship with Bryant and her willingness to voluntarily possess and handle firearms were material issues in the case. The photos were probative of these issues. Moreover, it is unlikely that the nature of the photographs, which merely depict two playful and smiling people holding firearms, were of the type to inflame the passions or prejudices of the jury to the degree that it would convict defendant on that basis. See *Mills*, 450 Mich at 77. And the trial court minimized any potential for unfair prejudice by instructing the jury regarding the limited, permissible purposes of the photos, specifically, that they could be considered only to determine "whether the [d]efendant committed the crimes she is charged with under duress," and not for any other purpose.

Additionally, to the extent that the trial court based its decision to admit the photographs on MRE 404(b)(1), it also did not err. That rule prohibits evidence of other crimes, wrongs, or

acts when offered "to prove the character of a person in order to show action in conformity therewith." The rule does not prohibit such evidence if it is (1) offered for a proper purpose, i.e., one other than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). In this case, the photos were not offered to prove defendant's character, but rather for their relevancy in demonstrating defendant's relationship with Bryant and her willingness to voluntarily possess and handle firearms.

### III. UNARMED ROBBERY INSTRUCTION

Defendant also argues that the trial court erred by denying her request that the jury be instructed on the lesser-included offense of unarmed robbery. We disagree. In *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013), this Court explained:

> "We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). However, not all instructional error warrants reversal. Reversal is warranted only if " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26. "[T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495. The verdict is undermined when the evidence clearly supports the requested lesser included instruction that was not given to the jury. *People v Cornell*, 466 Mich 335, 365; 646 NW2d 127 (2002).

"[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), overruled in part on other grounds by *People v Mendoza*, 468 Mich 527 (2003). Unarmed robbery is a necessarily included lesser offense of armed robbery. See *People v Reese*, 466 Mich 440, 446-447; 647 NW2d 498 (2002). Therefore, the trial court was required to instruct on this requested lesser offense if a rational view of the evidence supported it. We conclude that the trial court did not err by finding that a rational view of the evidence did not support an instruction on unarmed robbery.

There was no factual dispute that Bryant and Conselyea robbed all three victims while armed with weapons. In all three cases, the evidence indicated that after defendant lured the victims into the house, codefendants Bryant and Conselyea robbed them while armed with firearms. Although there was no evidence that defendant personally possessed a weapon in EE's case, and she denied possessing a weapon at the time MJ was robbed (although she admitted to holding a firearm during the car ride), she did not dispute that her codefendants were armed and she admitted that she participated in the criminal conduct in all three cases, albeit asserting that she did so under duress. Because defendant was charged under an aiding or abetting theory, it

was not necessary to show that she personally possessed or used a weapon in order for her to be found guilty of armed robbery. See *People v Henderson*, 306 Mich App 1, 10; 854 NW2d 234 (2014). The factual issue for the jury to resolve in each case was not whether the offense committed was an armed or unarmed robbery, but whether defendant acted under duress when she assisted her armed codefendants in committing the robberies. No rational view of the evidence permitted the jury to find that defendant willingly assisted her codefendants, but that only an unarmed robbery was committed. Accordingly, the trial court did not err by denying defendant's request for an instruction on unarmed robbery. *Cornell*, 466 Mich at 357.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense trial counsel was ineffective for not moving to sever the trial in EE's case from the trial in the other two cases. We disagree. Because defendant did not raise an ineffective-assistance claim in the trial court and this Court denied defendant's motions to remand, our review of this issue is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant that she was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

MCR 6.120(B) permits joinder of two or more offenses against a defendant, and MCR 6.120(C) address when severance of two or more offenses is required. The rules provide:

> (B) On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the

potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

> (3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

> (C) On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1).

We note that although defendant frames this issue as involving defense counsel's failure to request severance, the record discloses that the three cases were consolidated for trial at defense counsel's request. MCR 6.120(B) expressly authorizes a court to join offenses charged in two or more informations on motion of a party. Defense counsel's request to consolidate the cases (and hence not to have them tried separately) was clearly a matter of trial strategy. The trial court had already ruled that evidence concerning each robbery would be admissible in a separate trial of each case under MRE 404(b)(1), to show the existence of a common plan or scheme. Further, defendant intended to present the same duress defense in each case. Defense counsel may also reasonably have believed that separate trials would have increased the likelihood of a conviction in at least one of the cases. Under the circumstances, defendant has not overcome the strong presumption that defense counsel's decision to request consolidation of the three cases was sound strategy (were we to so construe defendant's argument on appeal). *Tommolino*, 187 Mich App at 17. Moreover, defendant does not argue, and the record does not reveal, that there were any subsequent rulings or evidence discovered after consolidation that would support the conclusion that defense counsel should have sought to sever the trials at any point. We conclude that defendant has not demonstrated that she received the ineffective assistance of counsel or that remand to further explore this issue in a *Ginther* hearing is required. *Pickens*, 446 Mich at 338.

## V. SUFFICIENCY/GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the evidence was insufficient to support her conviction of armed robbery in the case involving EE, or alternatively, that the jury's verdict in that case was against the great weight of the evidence. We disagree.

The jury convicted defendant of a single count of armed robbery in the case involving EE. The elements of armed robbery are

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Gibbs*, 299 Mich App 473, 490-491; 830 NW2d 821 (2013).]

The prosecution's theory was that defendant aided and abetted Bryant and Conselyea in robbing EE at gunpoint. To find that a defendant aided or abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or another person, (2) the defendant performed acts or gave encouragement that assisted in the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time she gave aid and encouragement. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); see also *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). An aider or abettor's state of mind may be inferred from all of the facts and circumstances of the crime. *Carines*, 460 Mich at 757. Factors that can be considered include a close association between the principal and the defendant, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Id*. at 757-758. However, "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992).

## A. SUFFICIENCY OF THE EVIDENCE

We review de novo a defendant's challenge to the sufficiency of the evidence in support of a conviction. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). We view the evidence in a light most favorable to the prosecution to determine whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence and any reasonable inferences that can be drawn from the evidence may be sufficient to prove the elements of a crime. *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses," *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005), and all conflicts in the evidence must be resolved in the prosecution's favor, *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

The evidence showed that Bryant and Conselyea committed the armed robbery of EE. Although defendant did not personally participate in the robbery, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that she aided and abetted her codefendants by greeting EE when he arrived and then inviting him inside the house where Bryant and Conselyea could assault and rob him. Further, the prosecution presented evidence of text messages that were exchanged between defendant and Bryant that supported an inference that she was involved in the planning of the robbery, or was aware of her codefendants' intent to rob EE after he entered the house. Indeed, defendant testified at trial that she was aware that Bryant intended to rob EE, but claimed that she participated in the offense only because Bryant threatened to harm her and that she acted under duress.

The evidence presented at trial was sufficient to rebut defendant's duress defense. Again, to successfully establish duress, a defendant must show (1) threatening conduct sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm, (2) the conduct in fact caused such fear of death or serious bodily harm, (3) the fear or duress was operating upon the mind of the defendant at the time of the alleged act, and (4) the defendant committed the act to avoid the threatened harm. *People v Lemons*, 454 Mich 234, 247; 562

-8-

NW2d 447 (1997). The prosecution presented photos and text-message exchanges between defendant and Bryant that supported the inference that defendant had an amicable relationship with Bryant and was a willing participant in the robberies. Further, EE, as well as the other two victims, denied seeing or hearing either of the codefendants threaten defendant. The prosecution also presented evidence of defendant's more active participation in the offenses involving DS and MJ. The jury could have found that defendant's participation in those offenses, including being armed with a firearm at various points and being left alone by Bryant yet continuing to participate in the robbery (at one point during DS's robbery even being left alone in the house and subsequently rejoining her codefendants at another location), showed that she was a willing participant who was not under duress. The evidence of defendant's continued and willing involvement in those offenses likewise supported an inference that she was a willing participant in EE's robbery when she greeted him upon his arrival and invited him inside the house where he was robbed.

Accordingly, viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant knowingly aided or abetted the robbery of EE, and did so willingly, without acting under duress. *Wolfe*, 440 Mich at 513-515.

## B. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that because she did not personally participate in the robbery of EE, her conviction of armed robbery in that case was against the great weight of the evidence. We disagree. Defendant did not move for a new trial in the trial court to preserve the issue regarding the great weight of the evidence. *People v Cameron*, 291 Mich App 599, 617-618; 806 NW2d 371 (2011). Accordingly, we review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

In *People v Lacalamita*, 286 Mich App 467, 469-470; 780 NW2d 311 (2009), this Court stated:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Further, the resolution of credibility questions is within the exclusive province of the jury. *People v DeLisle*, 202 Mich App 658, 662; 509 NW2d 885 (1993).

It was undisputed that EE was robbed by Bryant and Conselyea, and that defendant assisted in the commission of that robbery by greeting EE at her house when he arrived and

inviting him inside, where he was then assaulted and robbed by the armed codefendants. Defendant acknowledged in her own testimony that she was aware of Bryant's plan to rob EE when she invited him inside. The evidence thus amply supports the jury's verdict that defendant aided or abetted her codefendants in the armed robbery of EE. Further, to the extent defendant argues that her testimony should have been given more weight by the jury, we decline to usurp the jury's role in judging witness credibility. See *Lemmon*, 456 Mich at 642 (explaining, absent extraordinary circumstances, issues of witness credibility are for the jury and a reviewing court may not substitute its view of the credibility of the evidence for the jury's determination). Defendant has not shown that the jury's verdict is against the great weight of the evidence.

## VI. OFFENSE VARIABLE 10

Defendant further argues that, in sentencing defendant, the trial court erred by assessing 15 points for offense variable (OV) 10 (exploitation of a vulnerable victim). We disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

OV 10 addresses the exploitation of a vulnerable victim. MCL 777.40(1)(a) directs a court to assess 15 points if an offense involves "predatory conduct," which is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). The predatory conduct that supports the score must have occurred before the commission of the offense. *People v Cannon*, 481 Mich 152, 160; 749 NW2d 257 (2008). In *Cannon*, the Court explained that the following three questions must be answered in the affirmative before OV 10 may be scored at 15 points:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*Id*. at 162.]

The Court further explained that

> [i]n drafting OV 10, the Legislature did not intend that 15 points be assessed for preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection. Rather, the focus of OV 10,

including the assessment of points for predatory conduct, is on the exploitation of vulnerable victims. [*Id*. at 162.]

Our Supreme Court has also explained that predatory conduct need not be directed at "the victim," but can extend to conduct directed at "a victim," for instance, by the defendant lying in wait or stalking members of the community at large. *People v Huston*, 489 Mich 451, 459-462; 802 NW2d 261 (2011). "The timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct." *People v Ackah-Essien*, 311 Mich App 13, 37; 874 NW2d 172 (2015).

Here, the charged offense involved predatory conduct in the form of placing ads for sexual activities on online websites, exchanging photos and messages with men who responded to the ads, and then inviting them to come alone to the location of the robberies under the pretext that they were going there for prearranged sexual encounters. Although defendant may not have placed the ads herself or communicated electronically with the victims, defendant's photograph was used and exchanged during the communications and text messages exchanged between defendant and Bryant indicate that defendant was aware of the plan and helped prepare the house for the victims' arrivals. Furthermore, the plan involved luring the victims inside the house where they could be attacked and robbed, and the evidence showed that defendant greeted the victims when they arrived and invited them into the house. Although defendant denied that she was a willing participant in the robberies, the jury rejected her claim that she acted under duress. The evidence therefore supports the trial court's 15-point score for OV 10. *Hardy*, 494 Mich at 438.

Affirmed.


/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica

-11-